## John T. Moore & al. *versus* Henry Moore.

Possession alone, although for a less term than twenty years, is sufficient to
maintain an action of trespass *quare clausum*, excepting against one who
can exhibit a legal title.

The disseisor, having been in by disseisin for less than twenty years, may
put an end to his disseisin, or transfer it to another, without any convey-
ance in writing.

A contract by a disseisor to purchase the land of the owner, destroys all
claim to hold it adversely, either by himself or by those in possession for
less than twenty years anterior to him.

In an action of trespass *quare clausum*, where each party relies merely on
possession without proof of title, a contract by one to purchase of the
owner is admissible in evidence, for the purpose of showing the character
of the possession.

Trespass *quare clausum*. The trespass was alleged to ·
have been committed upon a five acre lot, No. 14, in Gardiner.

At the trial, before Whitman C. J. at the adjournment in
March, 1842, the plaintiffs produced a deed to themselves,
purporting to have been executed by John Jeffries and others,
by their agent Charles Vaughan, dated April 1, 1841, and .
proved the execution by Vaughan, and attempted to prove the
execution of the powers of attorney authorizing the convey-
ance. They proved the handwriting. of a subscribing witness
to one of them, and thereupon the deed and power of attorney
were read to the jury ; but as it afterwards appeared that the
power was executed by a person as an executor, and there was
not proof that he was such, the deed and power were ruled
out of the case. The plaintiffs then attempted to prove that

they and their father John Moore, under whom they claimed, had been in the exclusive and uninterrupted · possession of the lot for more than twenty years next before the bringing of the suit, and adversely to the defendant and those under whom he claims. For this purpose they introduced ten witnesses, whose testimony is given in the exceptions, and sufficiently stated in the opinion of the Court. The plaintiffs also introduced a written agreement, signed by John Moore, their father, dated Dec. 14, 1819, and proved its execution, and delivery to Charles Vaughan, agent of Jeffries and others, wherein he contracted to purchase lot No. 14 of them. The defendant objected to the reading of this paper to the jury, but it was admitted by the Judge. It was proved, that the land in controversy had been taxed to Else Moore, in 1814, 1815 and 1816, but that in 1817, and for several successive years, it was taxed to John Moore.

The defendant then proved and read to the jury a deed from Else Moore and others, bearing date Feb. 11, 1841, purporting to be a conveyance of lot 14 to him. He also introduced nine witnesses, whose testimony also appears in the exceptions, to disprove the title of the plaintiffs, and to set up one in himself. This is also sufficiently noticed in the opinion of the Court.

There was also a motion for a new trial because the verdict was against the evidence.

Thereupon the Court instructed the jury, that to constitute a right to maintain this action, the plaintiffs must make out some kind of a title. That possession alone would be sufficient to maintain it against a mere trespasser without any pretence of title. But that against those who exhibited evidence of title something more was necessary. That if the plaintiffs had shown to the satisfaction of the jury, an adverse, exclusive and notorious possession in themselves and the ancestor under whom they claim, of twenty years duration, next before the trespass complained of in this action, a sufficient title was made out on their part to entitle them to recover; provided the act complained of as a trespass were proved. To

constitute such adverse possession, that it was not necessary for the plaintiffs to show that they and their ancestor had kept the lot within fence all that time. That it was only necessary the possession should be notorious, so that those who had any claim to the land must have had knowledge of it. That if in the present case, the possession of the plaintiffs and of their ancestor was such that Else Moore and her other sons must have known it, and that it was intended to be adverse and exclusive, and did not for the term aforesaid, attempt to interrupt it; such possession would bar them from a right of entry thereafter. That the plaintiffs, as the case was presented to the jury in this trial, must rely upon such an adverse possession. If it was not made out to the satisfaction of the jury the plaintiffs could not recover. That the evidence to this point was conflicting. That it was their duty to reconcile if they could. If they could not they must consider of the weight of testimony on the one side and on the other, of the characters, standing and credibility of the witnesses. That if they found the testimony on one side of a negative character, and on the other of a positive character, the latter was rather to be allowed to be of weight than the former. But that there were degrees of weight to be attributed to negative testimony, depending upon circumstances. In some cases that it would be entitled to very little weight, while in others it might be nearly or quite equal to positive testimony. That it would depend very much on the opportunity which the witness had for knowing, and upon the attention which it might appear that he paid to the incident about which he might be called to testify.

The jury were further instructed upon a suggestion made by the counsel for the defendant, that if Else Moore gave up the lot in question, or abandoned it to her son John, upon his making claim to it, and he went into possession by her consent, and she suffered him to go into the exclusive possession of it, and to continue such possession for the term of twenty years, she could not, nor could any persons under her, enter upon the land without being liable as trespassers. But that if John merely went into possession under her, without any such sur-

render or abandonment on her part, it would be otherwise, however long his possession might continue.

The Court further instructed the jury, that if they were satisfied lot No. 14 had been taxed to said John Moore during his life, from 1817 or '18, they would judge whether it was reasonable for them to believe, that Else Moore and her other sons must have known it or not, and if they did it might furnish evidence tending to show an adverse possession in him.

The Court further instructed the jury, that the deed of Jeffries and others to the plaintiffs, was wholly out of the case, the execution thereof not having been proved; and if in the case, would avail the plaintiffs against Else Moore and those claiming under her.

And finally, if they were satisfied, that said John and his heirs, the plaintiffs, had for more than twenty years before the trespass complained of was committed, been in the uninterrupted and adverse possession of said lot No. 14 exclusively and notoriously, and if the commission of the trespass was fully proved, the verdict should be for the plaintiffs, otherwise it should be for the defendant.

The jury returned a verdict for the plaintiffs, and the defendant filed exceptions to the admissions of evidence, and instructions and opinions of the Court.

*Wells* argued for the defendants, contending: —

That the contract to purchase of Jeffries and others was improperly admitted. The plaintiffs claimed title by possession, and this paper had no tendency to prove the issue, but merely some claim under supposed owners. It was signed only by the father of the plaintiffs, and is no better than his declarations.

That the instruction, that fencing was not necessary in order to acquire a title by adverse possession of land on which were no buildings, was erroneous. *Blake* v. *Freeman*, 13 Maine R. 130; *Ken. Pur.* v. *Springer*, 4 Mass. R. 416.

That the definition of *disseisin* was erroneous. It allowed the statute of 1821, c. 62, § 6, to act retrospectively, when it

should have had but a prospective operation. *Ken. Pur.* v. *Laboree*, 2 Greenl. 275.

The instruction, that the jury should take into consideration the *character and standing* of the witnesses was erroneous. If the character for truth is unimpeachable, every witness stands alike.

That the possession of John Moore by the consent of his mother, could not disseise her.

Taxes may legally be put to the owner or the occupant of land, and the assessment to one or to the other could not affect the question of disseisin.

The heirs, and not the widow, succeed to the rights of an intestate in real estate. The possession of John Moore was that of all his brothers and sisters, and he could thereby acquire no title by disseisin against them. 15 Maine R. 455; 2 Fairf. 309; 5 Pick. 135; 12 Johns. R. 367.

*F. Allen* argued for the plaintiffs, and replied to the argument for the defendants. The remarks of the Judge in relation to the weight of evidence, were, as was said, but commentaries upon the testimony, and not subject to exceptions, as matter of law. On this point were cited *Ware* v. *Ware*, 8 Greenl. 42, and *Carver* v. *Astor*, 4 Peters, 1.

The opinion of the Court was drawn up by

SHEPLEY J. — This is an action of trespass *quare clausum* to recover damages for removing, on the 13th of May, 1841, a fence from lot No. 14, in the town of Gardiner, containing about five acres. Possession is sufficient to enable the plaintiffs to maintain the action against one, who cannot show a better title. And they are under no necessity of proving, that they have been in possession claiming to own for more than twenty years except against one, who can exhibit a legal title. If the defendant therefore has not exhibited any legal title, and the plaintiffs and those, under whom they claim, have been in the exclusive and adverse possession for several years, it will not be necessary to determine, whether they fully proved such a possession for more than twenty years.

It appears from testimony introduced by the defendant, that Reuben Moore, the father of the defendant and grandfather of the plaintiffs, in 1798 owned lot No. 15, also containing about five acres, and that there was no fence between it and the adjoining lot No. 14; and that one third part of the ten acre lot, comprehending lots No. 14 and 15, was cleared, fenced, and occupied, by him; that he died in the year 1805, being at that time in the occupation of both lots; that he left a widow and several children; and that the widow continued to occupy till 1808, when for the first time a fence was extended round the whole of lot 14; and that it was cleared in 1810; that a suit was brought by the proprietor in 1812, to recover it, without success; and that the son John, the father of the plaintiffs, took care of it. Charles Moore testifies, that John told him in 1822, that Mr. Vaughan said he should bring a new action for the lot unless some one would buy it, and wished him to buy with him; that in 1826 John claimed the lot, and said he had made a bargain with Mr. Vaughan for it; and that his mother said to John, she should do nothing about the lot, and that she concluded to give it up to John, who occupied it that year. Until this time the testimony in defence would be sufficient, if uncontradicted, to prove that the widow continued to occupy and claim the lot; but it would not show, that any son had obtained by possession any claim even to improvements. And when the whole testimony is examined, there can be no reasonable doubt, that during the year 1826, and subsequently until his death, John occupied the lot and claimed to do so as his own under the contract, which in 1819 he had made with Mr. Vaughan to purchase it of Jeffries, the owner; and that the plaintiffs, as his heirs, continued that occupation until this action was brought.

Had Else, the mother, acquired a title before she undertook to surrender her claims to her son John? Although a witness makes a general statement, that her husband occupied both lots at the time of his decease, when it is taken in connexion with the other testimony of the defendant, it clearly appears, that there was no such occupation or act of ownership on more

than the small portion first enclosed either by him or his widow, as would give notice of any adverse claim, until the whole was fenced in the year 1808. Until that time the greater part was uncleared, unimproved and unfenced, and there is no proof of any act of ownership upon it. The earliest period, at which a possession open, notorious, exclusive, and adverse, could have commenced on the greater portion of the lot, was during the year 1808. The defence does not distinguish between different portions of lot 14, by attempting to show that the fence removed was from the part fenced and improved before 1808; and the widow could not therefore have acquired a title against the true owner before the year 1826. When she surrendered her claims to her son John, there is no indication of an intention either on her part or on his, that he should possess it for the benefit of all the heirs of the father. And this act of hers put an end to her disseisin, or transferred it to her son John; and this she might do without any conveyance in writing. The deed of the 11th of February, 1841, from Else Moore and others to the defendant, could convey no title or interest whatever, for the grantors had nothing to convey. And when John was in possession in 1826, under a contract to purchase of the owner, there was an end of all claims to hold it adversely either by him or those in possession anterior to him. They had abandoned or transferred their possession, and he had given a contract to purchase and was holding under it. *Small* v. *Proctor,* 15 Mass. R. 495. The possession of the plaintiffs, claiming under their father, was sufficient to enable them to maintain the action against the defendant, whether their father's exclusive possession commenced before 1826 or not.

It is not therefore necessary to examine or decide several points presented in the arguments.

The contract of the 14th December, 1819, made by John Moore with the agent of the owner, was legally admissible in evidence for the purpose of shewing the character of his possession. For this purpose his own acts and declarations, while in possession, may be given in evidence. *Shumway* v. *Hol-*

*brook,* 1 Pick. 116.   And this was a subsisting and valid contract, while he was in possession.

*Exceptions overruled.*